## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| FD SPECIAL OPPORTUNITIES V, LLC<br>and FD GP INVESTMENT, LLC, | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | Case No. _____ |
| SILVER ARCH CAPITAL PARTNERS, LLC,<br>JEFFREY WOLFER, an individual,<br>and MATT COLE, an individual, | ) ) ) ) | |
| Defendants. | ) ) | |

## COMPLAINT

Plaintiffs FD Special Opportunities V, LLC and FD GP Investment, LLC (together, "FD"), bring this cause of action against Defendants Silver Arch Capital Partners, LLC ("Silver Arch"), Jeffrey Wolfer ("Wolfer") and Matt Cole ("Cole"), and state the following:

### Parties, Jurisdiction, and Venue

1.      FD is a Delaware limited liability company and is now, and at all times mentioned in this Complaint had a principal place of business in Middlesex County, Massachusetts.

2.      Silver Arch is a New Jersey limited liability company and has now, and at all times mentioned in this Complaint had, a principal place of business in Bergen County, New Jersey.

3.      Wolfer is an individual and is, upon information and belief, a resident of the State of New Jersey.

4.      Cole is an individual and is, upon information and belief, a citizen of and domiciled in the State of New Jersey.

5.     There is more than $75,000 in controversy in this lawsuit and thus, subject matter jurisdiction is proper pursuant to 28 U.S.C. § 1332(b).

6.     Venue is proper pursuant to 28 U.S.C. § 1391(b)(3).

### Facts

7.     FD is the fee simple owner of certain real property located in Charlotte, Mecklenburg County, North Carolina, known as "McCullough Commons" (the "Property").

8.     FD's existing debt was maturing on January 6, 2021.

9.     FD was actively pursuing new lenders to refinance the Property in the principal amount of $27,000,000.00 US Dollars.

10.     Silver Arch's principal office is located in New Jersey and Silver Arch is, upon information and belief, owned at least in part by its President and CEO, Wolfer.

11.     Silver Arch holds itself out to be "a leading, nationwide lender to the commercial real estate market" who "see[s] wide-open highways where others see brick walls." and for commercial bridge loans claims to offer "Quick turnarounds".  Silver Arch's LinkedIn page says in part, and ironically in light of what Silver Arch did to FD, "There's nothing we haven't seen."

12.     Based on these representations (and others), in September of 2020 FD engaged with Silver Arch for the purpose of refinancing FD's existing debt on the Property.  FD informed Silver Arch in the first conversation that FD's then-current debt expired January 6, 2021.

13.     As a part of the refinancing discussions and as stated on the term sheet (the "Term Sheet") provided by Silver Arch on October 20, 2020, Silver Arch required, and FD provided, a Due Diligence Deposit in the amount of $100,000.00 US Dollars in order to obtain a Due Diligence Checklist for Silver Arch's site inspection, appraisal, underwriting, and evaluation procedures,

"The unused portion …. Would be credited toward the Origination Fee at closing. In the event Lender does not perform its obligations hereunder, the Due Diligence Deposit would be refunded to Borrower." FD paid the $100,000.00 US Dollars by interstate federal funds wire to Silver Arch on October 26, 2020.

14.     The Term Sheet provided that the Due Diligence Deposit would become non-refundable only if Silver Arch "provided a Loan Offer consistent with terms and conditions herein."

15.     The terms of the Term Sheet included, but were not limited to, a projected transaction closing date of December 15, 2020 for Silver Arch's loan to FD.

16.     FD provided all requested due diligence materials for Silver Arch to evaluate the Property.

17.     On November 30, 2020, following Silver Arch's purported review of the due diligence materials, Silver Arch agreed to make a loan in the amount of $26,700,000.00 (the "Loan Offer") "based on the terms, conditions, and requirements of the Term Sheet."

18.     FD accepted Silver Arch's offer on November 30, 2020.

19.     Seven days later, on December 7, 2020, only eight (8) days prior to the anticipated closing date, Silver Arch subsequently provided FD with an application (the "Application") which would "set forth the terms and conditions intended to be submitted to the investment committee of Silver Arch Capital Partners, LLC", which terms and conditions deviated, in part, from those contained in the Term Sheet.

20.     The Application added new and materially different terms, including stringent concepts regarding cash management, reserves, recourse, limitations on payment of preexisting payables, and extended the projected close date by fifteen (15) days, to December 30, 2020.

21.     The Application required a further "Good Faith Deposit" of $133,500.00 US Dollars from FD to Silver Arch, "to be applied by Lender to cover fees and expenses incurred by Lender."

22.     Despite the change in terms, FD in good faith paid the "Good Faith Deposit" by interstate federal funds wire on December 8, 2020, and diligently proceeded to complete its obligations and to meet Silver Arch's closing conditions.  At that time, Silver Arch held a total of $233,500.00 US Dollars received from FD, and that sum remains held by Silver Arch.

23.     Aware of the amount of time that it would take to communicate with tenants, negotiate loan documents, and otherwise prepare to close the transaction, as early as December 1, 2020, FD asked Silver Arch for its form tenant-estoppel letter and Subordination, Non-Disturbance and Attornment Agreement.  Silver Arch did not provide those standard forms until December 10.

24.     On December 7, 2020, FD's managing member, David M. Ferris, spoke by telephone with Cole.  Mr. Ferris told Cole that, despite the Loan Application saying that the transaction would close by December 30, FD desired to close by December 24, 2020, and Cole agreed that the 24th was the target.

25.     FD also, knowing their importance to the transaction closing, repeatedly asked Silver Arch for proposed loan documents—promissory note, mortgage, etc.  Silver Arch did not provide any proposed loan documents to FD until December 14, 2020—mere days before the target closing date—and, despite FD providing timely feedback on those drafts, to this day Silver Arch has not provided any further drafts of the loan documents to FD.

26.     Having acted in good faith and met all of the obligations required as part of the Application's closing conditions, FD expected that closing would timely occur.

27.     On Christmas Eve, December 24, 2020, mere days before closing and at the very

4

end of a pre-closing phone call between FD and Silver Arch, Silver Arch, Wolfer and Cole began to reveal their bad-faith intentions by hinting they may not be prepared to close a loan to FD due to pandemic concerns. That call ensued from FD's request for closing assurance from Silver Arch.

28.      On December 29, 2020, *the eve of the agreed-upon closing date,* Silver Arch began to waffle over funding the loan based on what they "now consider a significant problem: Concentration of McCullough's revenue in restaurants... Listen to the pundits. Talk of a wave of restaurant closures. Cashflow. We're looking at that."

29.      On December 29, 2020, Wolfer proposed to further change the terms by extending closing indefinitely, stating "It's not that we're not going to lend. We will lend. We will come back to you," and further added "There will be significant reserves that have to be imposed. Millions of dollars will be required reserve." The changed loan terms were a "bait and switch".

30.      Silver Arch's specious and newly-invented concerns were based on the second strain of SARS-CoV-2 (the "Second Strain") and its potential impact on the Property.

31.      Silver Arch purports to base their sudden, last-minute concern on a long-known and nearly year-long pandemic, the Second Strain of which had been known and publicly reported on since early December 2020, contemporaneous with Silver Arch's issuance of the Application, yet the pandemic, Second Strain, or "Concentration ... in restaurants" was not once mentioned during the months-long negotiations until Silver Arch reneged on making the loan immediately prior to closing. Indeed, in the weeks following Silver Arch's engagement with FD several effective vaccines against the coronavirus were revealed and macroeconomic sentiment improved overall.

32.      Silver Arch's last-minute concern is merely a conveniently timed excuse that fits their initial plan to not close on the loan, retain advanced fees paid by FD, and demonstrates a complete lack of understanding of the Property that can only be explained by Silver Arch's failure

to review the due-diligence materials provided by FD.

33.     FD provided due-diligence materials demonstrating that the Property is a multi-tenant retail shopping center which has maintained a ninety-five percent (95%) collection rate throughout the duration of the global COVID pandemic.

34.     FD provided due-diligence materials demonstrating restaurant use in the Property accounts for only 19.86% of the Property's square footage and accounts for only 34.19% of the Property's revenue.

35.     FD provided due-diligence materials demonstrating that in fact 60% of the Property revenue is derived from national "credit" or investment-grade tenants.

36.     Despite the challenges faced during this global pandemic, FD has increased the Property's occupancy rate and has added new restaurant concepts to the tenant roster.

37.     Silver Arch's failure to know these basic facts about the Property is evidence that they intentionally and deceitfully solicited deposit monies from FD in bad faith with no intent to review the due diligence materials or to consummate the loan.

38.     The pandemic has wreaked havoc, particularly on restaurants, but FD has demonstrated the ability to maintain and even add to its tenant roster, including new restaurant uses during the pandemic.

39.     Multiple vaccines are in the process of being distributed and have been reported to be effective against the Second Strain and other subsequently discovered strains, lending to the fact that these fictitious last-minute concerns are merely a ploy by Silver Arch to retain FD's Due Diligence and Good Faith Deposits without consummating the loan.

40.     Silver Arch is using the pandemic as an attempt to disguise their intentional bad faith dealings and deceptive acts and practices in order to unlawfully retain FD's good faith

deposits.

41.     Prior to the final hour before closing, in which Silver Arch miraculously uncovered this "significant problem", traditional lending markets and CMBS markets have in fact opened up again and are returning, albeit cautiously, to pre-pandemic lending activities.

42.     Following submission of the Application and payment of the Good Faith Deposit, Silver Arch materially changed the terms of the proposed loan.

43.     Silver Arch acted in bad faith by raising false concerns in the final hour as a way to try to retain FD's Due Diligence Deposit and Good Faith Deposits without consummating the loan.

44.     FD has requested a refund of its Due Diligence Deposit and Good Faith Deposits.

45.     Silver Arch has refused to refund the Due Diligence Deposit and Good Faith Deposits.

46.     Silver Arch, Wolfer and Cole have demonstrated their primary business model is grift, not lending, and it is their standard practice to solicit advance fees from potential borrowers in connection with proposed loans they have no intention of making.

47.     Wolfer was previously involved with Kennedy Funding Incorporated ("KFI").

48.     KFI is, upon information and belief, still owned and operated by other members of Wolfer's family.

49.     The United States District Court for the District of New Jersey observed in a 2008 case that Wolfer's former company had "been sued so many times on similar Loan Commitments that it has, for better or worse, generated its own body of law…" *See Royale Luau Resort, LLC v. Kennedy Funding, Inc., Jeffrey Wolfer, Joseph Wolfer, John Does 1-10,* Case No. 07-cv-01342 (HAA), 2008 U.S. Dist. LEXIS 11902, at *16 (D.N.J. Feb. 19, 2008) (gathering

cases).

50.     A review of these cases demonstrates a series of victim borrowers have, on numerous occasions, alleged Wolfer and his companies use pre-loan documents as "part of [a] fraudulent scheme to induce [prospective borrowers] to pay [Wolfer's companies] an advance fee, even though [the companies] and the Wolfers never intended to provide a loan". *See Kennedy Funding, Inc. v. Ruggers Acquisition and Development, et al. v. Jeffrey Wolfer, Kevin Wolfer*, Case No. 07-cv-00669, 2007 U.S. Dist. LEXIS 55261, at \*12 (D.N.J. July 31, 2007).

51.     Silver Arch and Wolfer have continued to follow KFI's practices and have themselves been sued numerous times for similar failures to fund while attempting to retain advanced fees paid by putative borrowers. *See PVD Phase II, LLC v. Silver Arch Capital Partners, LLC, Jeffrey Wolfer,* Case No. 1:20-cv-01720-AJN-KNF (S.D.N.Y.); *McKinney Capital & Advisory Group, LLC v. Silver Arch Capital Partners, LLC,* Case No. 1:20-cv-6054 (S.D.N.Y.).

52.     In an unpublished Opinion, the United States Court of Appeals for the Third Circuit affirmed the verdict entered in a bench trial before the United States District Court for the District of New Jersey wherein it was determined that in connection with claiming an entitlement to advance fees, Wolfer (and KFI) violated the duty of good faith and fair dealing included in all contracts. *Omi Credit Alliance Inc. v. Kennedy Funding, Inc.*, 371 F. App'x 252 (3d Cir. March 22, 2010).

53.     In its Opinion, the 3rd Circuit explained that "the District Court's decision [wa]s supported by its findings regarding Kennedy's post-commitment behavior—to wit, its failure to negotiate in good faith by (1) merely 'deflecting Omni's collateral proposals and rejecting them with little explanation'; and (2) declining to 'take any reasonable steps to close the loan.'" *See id.* at 254 (internal citation omitted).

8

54.     Silver Arch and Wolfer employed similar tactics against FD, delaying closing with little explanation and using fictitious last-hour concerns related to the year-long pandemic.

55.     A cursory Google search of Silver Arch reveals a pattern of similar behavior by Silver Arch, stating:

> "This firm scammed a client of mine out of $60,000 and then wouldn't even turn over the appraisals they (my client) paid to have completed. STAY FAR AWAY!!!"

> "This firm is attempting to scam me out of 35,000...stay away"

> "Worst lenders, keep asking for more and more info. Faltered on their commitment to close on 10 may. We are a very experienced and qualified group of real estate investors so we were still able to close but because of them we had to take the bridge hard lender. Beware of these scammers."

> *See*
> *https://www.google.com/search?q=silver+arch+capital+partners*
> *&rlz=1C1AZAA_enUS750US750&oq=silver+arch+capital+partn*
> *ers&aqs=chrome..69i57j46i175i199j0l2j69i60.3507j0j7&sourceid*
> *=chrome&ie=UTF-8#.*

56.     Further internet research demonstrates a pattern of fraudulent and deceptive practices by Wolfer and Silver Arch, as multiple putative borrowers describe:

> "I contracted with Silver Arch in 2016 for a commercial bridge loan I spent months accumulating all data they required- extensive financials, IRS filings for 10 years, all asset disclosure, legal history, medical history etc. Everything except shoe size.... Every few weeks they would require wired funds for steps in the process- 30K for Good Faith deposit- 25K for surveys and appraisals- 15K for their lawyer to finalize ETC ETC until I spent 79K with all indications that loan would be approved. One week before loan was closing, Matt Cole with Silver Arch informed me that my loan could not be approved for bogus reasons. I was offered to recoup 25K if I signed a Hold Harmless agreement. I wanted my money back and refused to sign the agreement."

"Be warned: Silver Arch Capital Partners is a scam. These are the same dishonest individuals from Kennedy Funding. Senior management simply started a new company and are now operating the same way as Kennedy Funding. They ask for large advanced fees and do not deliver loans. Silver Arch CEO is Jeff Wolfer. This is the same Jeff Wolfer from Kennedy Funding. All other senior managers at Silver Arch are from Kennedy Fundings as well. Do not do business with these people. They are dishonest and unethical individuals, with numerous lawsuits against them. They are just running another "advanced fee" scam."

Search the following sources:

Kennedy Fund Scam

Jeffrey Wolfer

Omni Credit Alliance vs. Kennedy Funding

Shelton vs. Kennedy Funding

Lender Kennedy is Sued by Fortis Bank

Kennedy Settles $282 million, faces another for $36 million"

*See*     *https://www.scamion.com/silver-arch-capital-partners-llc-bc*

57.    Wolfer, Cole and Silver Arch have a demonstrated historical business practice of engaging in fraudulent and deceptive acts, and employed these same practices in soliciting Due Diligence and Good Faith Deposits from FD.

58.    Wolfer, Cole and Silver Arch never intended to close on the loan sought by FD.

59.    Wolfer, Cole and Silver Arch materially altered the terms under which they would have had any right to assert retention of the aforementioned deposits.

## Count One
### (Breach of Contract -- Silver Arch)

60.     FD repeats and re-alleges paragraphs 1 through 59 of the Complaint and incorporates them in this paragraph as if fully set forth.

61.     FD and Silver Arch are parties to a contract.

62.     Silver Arch has breached the parties' contract by failing to return to FD monies that are due and owed.

63.     Silver Arch has breached the parties' contract by materially altering the terms under which it would fulfill its obligations long after the contract was agreed to.

64.     FD has also suffered incidental and consequential damages as a result of Silver Arch's breach of the parties' contract.

## Count Two
### (Breach of the Implied Covenant of Good Faith and Fair Dealing – Silver Arch)

65.     FD repeats and re-alleges paragraphs 1 through 64 of the Complaint and incorporates them in this paragraph as if fully set forth.

66.     FD and Silver Arch are parties to a contract.

67.     Included in this contract is an implied duty of good faith and fair dealing.

68.     Silver Arch has breached this duty by failing to deal with FD in good faith and by acting to injure FD.

69.     FD has been damaged by Silver Arch's breach of its duty to FD in an amount to be determined at trial, but which exceeds $75,000.00 US Dollars.

70.     Silver Arch has made a pattern and practice of the unlawful conduct committed against FD and has committed the same unlawful acts against others.

11

## Count Three
### (Fraud – Silver Arch, Wolfer and Cole)

71.     FD repeats and re-alleges paragraphs 1 through 70 of the Complaint and incorporates them in this paragraph as if fully set forth.

72.     Silver Arch, Cole and Wolfer made numerous false and intentionally misleading statements to FD, as detailed in this Complaint, throughout the course of the parties' dealings.

73.     All of Silver Arch, Cole and Wolfer's communications that they intended to make a loan to FD, both orally and in writing, were false.

74.     Silver Arch, Cole and Wolfer knew that Silver Arch never intended to make a loan to FD but rather intended to take advantage of FD and pocket FD's good-faith deposits.

75.     Silver Arch, Cole and Wolfer engaged in false and misleading statements to induce FD to pay advance fees, which Silver Arch would claim entitlement to retain based on the fact no loan had closed or because FD was forced to source another refinancing lender prior to FD's previous mortgage loan expiring on January 6, 2021.

76.     Silver Arch, Cole and Wolfer made the statements in hopes that FD would rely upon them to its detriment.

77.     FD, in good faith, reasonably relied on these statements to its detriment and has been damaged in an amount to be determined at trial, but which exceeds $75,000.00 US Dollars.

78.     Silver Arch, Cole and Wolfer made intentionally misleading statements with malice aforethought to FD, as such FD is also entitled to recover punitive damages in an amount to be determined at trial.

**Count Four**
**(Violation of New York Consumer Protection From Deceptive Acts and Practices –**
**Silver Arch, Wolfer and Cole)**

79.    FD repeats and re-alleges paragraphs 1 through 78 of the Complaint and incorporates them in this paragraph as if fully set forth.

80.    The conduct of Silver Arch, Cole and Wolfer described in this Complaint constitutes fraudulent, unfair, and deceptive trade practices under General Business, Article 22, § 349.

81.    FD is, therefore, entitled to recover the damages it has suffered as a result of these acts pursuant to General Business, Article 22, § 349(h), as well as reasonable attorneys' fees.

**Prayer for Relief**

Wherefore, FD respectfully requests relief and entry of judgment in its favor against Silver Arch, Wolfer and Cole as follows:

1.    That the court award FD all damages which it has suffered;

2.    That the court award FD punitive damages;

3.    That the court award FD consequential damages;

4.    That the court award attorneys' fees according to proof;

5.    That the court award prejudgment interest and costs of suit incurred herein; and

6.    That the court award such other, further and different relief as this Court deems just and proper.

**Demand For Jury Trial**

FD hereby demands a trial by jury on all issues so triable as of right.

13

Respectfully submitted,

**TRAFLET & FABIAN**

/s/ Stephen G. Traflet
Stephen G. Traflet (ST-9654)
1001 Avenue of the Americas
11th Floor
New York, NY 10018
Tel: 212.244.6199
Fax: 212.859.7313

264 South Street
Morristown, NJ 07960
Tel: 973.631.6222
Fax: 973.631.6226
straflet@trafletfabian.com

**MCAFEE & TAFT**
**A PROFESSIONAL CORPORATION**
Michael K. Avery, Esq.
Alex Duncan, Esq.
Tenth Floor, Two Leadership Square
211 N. Robinson
Oklahoma City, OK  73102-7103
Tel:  405.552.2269
Fax:  405.228.7469

[*Pro Hace Vice* Application to be submitted]

*ATTORNEYS FOR PLAINTIFFS*
*FD SPECIAL OPPORTUNITIES V, LLC AND FD GP*
*INVESTMENT, LLC*

14