# BERNSTEIN CHERNEY LLP
ATTORNEYS AT LAW
767 Third Avenue, 30th Floor
New York, N.Y. 10017

Hartley T. Bernstein, Esq.
Phone: (212) 381-9684
Fax: (646) 304-8070
hbernstein@bernsteincherney.com

September 12, 2022

Hon. Ona Wang U.S.M.J.
United States Courthouse
500 Pearl Street
New York N.Y. 1007

Re: FD Special Opportunities V, LLC et al v. Silver Arch Capital Partners LLC et al, 21-cv-00797(VM)

Dear Judge Wang:

We represent Defendants Silver Arch Capital Partners, LLC ("SACP"), Jeffrey Wolfer and Matthew Cole in the above-referenced litigation.

I am writing in response to the September 22, 2022 letter from counsel for Plaintiffs FD Special Opportunities V, LLC and FD GP, Inc (collectively "FD") opposing Defendants' motion for a protective order limiting the scope of topics designated by FD for Defendant SACP's Rule 30(b)(6) deposition.

FD's position is at once disingenuous, untenable and transparent. As a threshold matter, it is important for FD to finally acknowledge one indisputable truth – FD suffered no damages from any of the matters alleged in the Complaint.[1] In fact, as Defendants have repeatedly noted, FD's decision to abandon efforts to close a loan with SACP was motivated by, and eventuated in, FD obtaining other financing, at significantly better terms and savings, within days of jettisoning SACP. To be clear, SACP never declined to make the loan. It was jilted by FD.

There is, in fact, only one reason that FD relentlessly seek information about other SACP clients, partners and transactions – to pursue Plaintiffs' articulated desire to disrupt and undermine SACP's business and professional relationships. That goal was first expressed by Plaintiffs' principal, David Ferris, in his January 8, 2021 scorched earth email to this law firm, a copy of which is provided herewith. It was more recently repeated, in an

---

[1] FD's theory of damages is transparently bogus and empirically unsupportable. In reality, by abandoning the SACP loan and obtaining financing elsewhere, just days later, **FD saved money.** As revealed in discovery, the loan obtained by FD from Northern Bank & Trust bore interest at a lower rate and contained terms far more favorable than those offered by SACP. Moreover, barely six months later, FD refinanced the Northern Bank & Trust loan at even lower rates! In other words, FD suffered no loss and incurred no damages when it walked away from SACP. FD's refusal to accept this would be astonishing if not for the reality that FD's agenda is not recovery of losses but destruction of SACP, as threatened by FD's principal, David Ferris.

BERNSTEIN CHERNEY LLP

email from FD's counsel to this law firm, in which, speaking for FD, counsel advised us as follows:

> We spoke with our clients recently in connection with coordinating and planning the mediation and depositions and they remain bullish, buoyed in their spirits by a recent transaction which has them very well-funded to pursue what they in no small part view as an opportunity to not only vindicate the wrongs of their own experience with Silver Arch, ***but also those of others***."

A copy of Michael Avery's September 6, 2022 email is produced herewith.

This is not a class action. This is not the forum for Plaintiffs to "vindicate" imagined wrongs suffered by others. Indeed, absent a scintilla of factual support, Plaintiffs repeat a tired refrain, claiming that SACP was engaged in a "Fee Collector Scam" and referencing cases against an unrelated entity. That claim, however, is entirely illusory. Certainly, discovery is not intended to provide a party with an opportunity to create and discover claims. That, however, is Plaintiffs' undeniable agenda – the search for claims, claimants and clients.

Those sentiments are reinforced in the September 12, 2022 to this Court from Alex Duncan in which Mr. Duncan reveals the true motivation for attempting to elicit information that is not related to this case. As Mr. Duncan states, even if the information elicited is ultimately inadmissible, "admissibility is, again, a separate issue from discoverability." As Mr. Duncan concedes, Plaintiffs merely wish to search for an inkling of evidence that Defendants "are engaged in a Fee Collector Scam." They would do so, as Mr. Ferris threatened, in order to injure SACP's business relationships and undermine the confidential relationships between SACP, its customers and participants in its financings.

And there you have it. Plaintiffs do not care a wit whether this evidence would be admissible at trial. They only wish to obtain the names and identifying information for SACP's customers and business associates so that FD can undermine those relationships and coax others to initiate litigations.

Such disclosure would not only be prejudicial to SACP, it would harm clients and business associates who provided information and entered into relationships with SACP with the understanding that the details they shared, including proprietary material, would remain confidential. Disclosure of such details would likely prove harmful to those third-parties as well.

To support its unjustifiable effort to "take down" SACP, Plaintiffs once again (as they have in virtually every document filed with this Court, cites, out of context, a quotation from a 14-year-old lawsuit that did not involve SACP and in which Jeffrey Wolfer was only one of many parties. Royale Luau Resort, LLC v. Kennedy Funding, Inc., Jeffrey Wolfer, Joseph Wolfer, John Does 1-10, Case No. 07-cv-01342 (HAA), 2008 U.S. Dist. LEXIS 11902, at *16 (D.N.J. Feb. 19, 2008. Even then, Plaintiff

ignores the fact that, after noting that Kennedy Funding had been involved in sufficient matters to have its own body of law (as might be said of many ongoing businesses, none of which have engaged in any impropriety), the Court noted that Kennedy Funding prevailed in many of those cases. Indeed, the Royale Luau case did not result in any judgment against Kennedy Funding, Jeffrey Wolfer or any other parties, but instead was dismissed with prejudice after the parties resolved their dispute.

FD's motivation is betrayed again by Mr. Duncan with his reference to punitive damages and his articulated desire to support that claim by seeking out other potentially aggrieved parties. That will not wash. As the U.S. Supreme Court noted

> Due process does not permit courts, in the calculation of punitive damages, to adjudicate the merits of other parties' hypothetical claims against a defendant under the guise of the reprehensibility analysis… Punishment on these bases creates the possibility of multiple punitive damages awards for the same conduct; for in the usual case nonparties are not bound by the judgment some other plaintiff obtains. *Gore*, *supra*, at 593 (BREYER, J., concurring) ("Larger damages might also 'double count' by including in the punitive damages award some of the compensatory, or punitive, damages that subsequent plaintiffs would also recover. *State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 423, 123 S. Ct. 1513, 1523 (2003).

Here, however, the feeble punitive damage claim is all Plaintiffs have, and they are intent upon conducting a fishing expedition to support it and troll for disgruntled parties in a desperate effort to demonstrate that SACP's alleged conduct was directed at the public generally. A few anecdotal allegations, however, would not suffice to support a claim of public harm. As the Court noted in *Rocanova v. Equitable Life Assurance Soc'y,* 83 N.Y.2d 603, 613, 612 N.Y.S.2d 339, 343, 634 N.E.2d 940, 944 (1994) "no inference of fraudulent intent can be drawn in this case from the mere compilation of 124 "vignettes" of policyholder "difficulties" with Equitable." The mere existence of other complaints and anecdotal allegations certainly is no more substantial that those 124 vignettes.

It is singularly inappropriate for Plaintiffs to attempt to use depositions to search for an essential element of their allegations – public harm. The fact that SACP has been party to several other litigations (none of which have resulted in any finding of liability) two of which have been initiated by FD's counsel, hardly establishes the level of public harm that the courts would demand to justify an award of punitive damages. Depositions are not calculated to support unsubstantial claims, such as those in Mr. Ferris's January 8, 2021 email, that Mr. Duncan concedes was "intemperate."

Sadly, Mr. Duncan's letter to this Court also misrepresents that "Plaintiffs have "learned in discovery" that SACP reached "out to one, and only one" party about participating in the loan to FD. That, regrettably, is a gross mischaracterization. Defendants

BERNSTEIN CHERNEY LLP

have produced email correspondence with one such party; that, however, does not preclude either the fact the Defendants may have communicate with other loan participants by other means or, as FD should be aware, would more routinely reach out to such parties closer to the eve of closing, when markets were set and circumstances more certain.

   Finally, Plaintiffs' claim of bad faith is without merit. As the Court is aware, depositions were to be preceded by mediation, in which the parties were directed by the Court to proceed in good faith. Defendants raised these issues with the Court sufficiently in advance of examinations to obtain the Court's guidance. Plaintiff then took five days to respond. In the interim, Defendants attended and participated in the Court-ordered mediation and did so in good faith. Given FD's professed determination to elicit information to further the claims of "others," it remains doubtful that FD entered mediation in the same spirit. Indeed, FD's earlier insistence that the depositions precede mediation signaled a determination to proceed to depositions – an obvious ploy to elicit precisely the information to which Defendants now object and with respect to which we seek a protective order.

   Depositions, which had been scheduled for this week, have now been delayed because on September 10th, the day following mediation, I tested positive for COVID-19 and was instructed to isolate for five days. We shall work with Plaintiffs' counsel to reschedule those depositions. In the interim, we are available should the Court wish to hold a conference on the serious issues raised by this motion.

Respectfully,

*Hartley Bernstein*

Hartley T. Bernstein