# BERNSTEIN CHERNEY LLP
ATTORNEYS AT LAW
767 Third Avenue, 30th Floor
New York, N.Y. 10017

Hartley T. Bernstein, Esq.
Phone: (212) 381-9684
Fax: (646) 304-8070
hbernstein@bernsteincherney.com

September 7, 2022

**MEMO ENDORSED.**

Hon. Ona Wang U.S.M.J.
United States Courthouse
500 Pearl Street
New York N.Y. 1007

Re: FD Special Opportunities V, LLC et al v. Silver Arch Capital Partners LLC et al, 21-cv-00797(VM)

Dear Judge Wang:

We represent Defendants Silver Arch Capital Partners, LLC ("SACP"), Jeffrey Wolfer and Matthew Cole in the above-referenced litigation.

Pursuant to the Court's Order of July 22, 2022 (Docket #94), the parties were directed to proceed to mediation in advance of initial depositions, which have been scheduled for September 13th through September 16th. Accordingly, a mediation session has been scheduled for this Friday, September 9, 2022, with Joseph J. Saltarelli, Esq. of Hunton Andrews Kurth LLP as the designated mediator.

As per Your Honor's Order, Defendants will participate in the mediation, in good faith, and with the objective of resolving this litigation if possible. We are concerned, however, that mediation will prove futile unless all parties share that goal. As Your Honor will recall, Plaintiffs insisted, repeatedly, that they did not wish to conduct any mediation until the depositions had concluded. We believe (and documents confirm) that Plaintiffs wished to pursue that strategy and sequence so that they would have an opportunity to elicit information at depositions that might prove detrimental to Defendants' business, and therefore create leverage to demand an exorbitant settlement having no relationship to any losses actually suffered by Plaintiffs. Indeed, as we shall advise the mediator, and support at the mediation, Plaintiffs suffered no losses here.

We come to this conclusion after reviewing both the subjects about which Plaintiffs seek to inquire at these depositions, and correspondence that indicates Plaintiffs' agenda is not limited to the allegations in this case or the relationship between these parties.

Plaintiffs have indicated they wish to question the SACP representative, at his or her Rule 30(b)(6) deposition on the following:

BERNSTEIN CHERNEY LLP

> All disputes concerning advance fees between You and putative borrowers. For each dispute, please be prepared to testify to:
> a. The name of the putative borrower(s)
> b. The timing of the dispute
> c. The nature of the dispute
> d. The amount in controversy
> e. Whether the putative borrower demanded a return or credit for advance fees paid.
> f. Whether the dispute resulted in a lawsuit, and if so, the case style and jurisdiction
> where the action was filed.
> g. If the dispute was resolved, how it was resolved.
>
> For each of the last three years, the number of putative borrowers who have paid You advance fees of any kind, including "due diligence deposits" or "good faith deposits."
>
> For each of the last three years, the number of putative borrowers who have paid You advance fees of any kind, including "due diligence deposits" or "good faith deposits," and received a loan from you.
>
> For each of the last three years, the percentage of Your income and profits attributable to advance fees of any kind paid by putative borrowers, including "due diligence deposits" or "good faith deposits," as opposed to other sources, such as loan origination fees and interest payments.

Under ordinary circumstances, we would object to these areas of inquiry on the ground that they are overly broad and seek information that bears no relationship either to the facts and circumstances of the transaction. Here, such objections are particularly apt and our concerns are even more troubling.

Defendants are concerned (and based upon communications from Plaintiff are justifiably disturbed) that Plaintiffs' goal here is not merely to litigate issues relating to the transaction between these parties, but to ferret out information that would encourage other parties to maintain proceedings against SACP and its principals, generate new lawsuits, and, at the same time, undermine SACP's existing business relationships. Defendant's concerns were exacerbated this week when, in response to my suggestion that the parties submit confidential Pre-Mediation Statements to Mr. Saltarelli, I was advised by Plaintiffs' counsel that "We spoke with our clients recently in connection with coordinating and planning the mediation and depositions and **they remain bullish, buoyed in their spirits by a recent transaction which has them very well-funded to pursue what they in no small part view as an opportunity to not only vindicate the wrongs of their own experience with Silver Arch,** *but also those of others*. Again though, if there is something other than what you have previously shared that you believe would or should adjust our

BERNSTEIN CHERNEY LLP

side's view of the expected outcome of the case, please let us know, as we would sincerely want to see that." (Emphasis added).

Defendants are concerned that this objective – vindication of the purported "wrongs" suffered by "others" - is not consistent with an intention to mediate in good faith, but rather, a signal that Plaintiffs are intent upon pursuing a course of action that goes far beyond allegations stemming from the relationship between these parties. This is not, however, a class action.

These concerns do not originate in a vacuum. Plaintiffs' principal, David Ferris, has been threatening to wreak havoc on Defendants since shortly after Plaintiffs abandoned their relationship with SACP. An email from Mr. Ferris to this law firm in December 2020 (after FD already had arranged financing from another source) signaled that his intentions went well-beyond an effort to recover purported losses:

> Our legal team's research (Greenberg, Timoney Knox, Ferris in house attys) has now made us fully aware your clients are operating a financial scam; taking client deposits in a very similar manner and not performing on their loans. Mr. Wolfer and Cole are using Covid to prey on unsuspecting borrowers. Iv (sic) called some of my best contacts with NJ and am awaiting the Governors return call for direct contacts to the AG, FBI Financial Crimes Div (over the weekend im (sic) going to call the former FBI SAC from NJ) that was driving my Ferrari last summer and find out who I need to get involved ASAP to prevent more victims. In days not weeks your clients should wonder if law enforcement is recording their conspiracy calls.
>
> Given your historical role settling this criminal behavior its clear there are a significant number of aggrieved applicants who's (sic) deposits were stolen with no services or loan provided. As such, I have assembled a good team to pursue your clients for fraud in a class action law suit. If you and your clients have not figured out the connection yet let me make it clear, I am a graduate of Loyola Law 1996, Keith Vernon was my classmate 1996 (godfather of my daughter – brought down big tobacco), and Jay Farraher my cousin class of 1994. We the Loyola team are going to contact every victim or as Silver Arch would call them "applicants" who applied for a loan with Silver Arch that did not result in a financing. We know we will find a long list of applicant's where front end fees were collected and no loan occurred. We are going to sue in SD of NY and have enough counts and claims that their insurer is going to run for cover and likely not cover the extent of the claims. Tell your clients to think about the millions in fees they wrongfully took from applicants then adding treble damages to it and the fact that Keith is going pursue their wrong doing for me for free. They will be offering me a seven figure settlement within 90 days and wish they wired my money back. Your clients should be thinking about RICO, or why Harvey Weinstein was

BERNSTEIN CHERNEY LLP

> put in jail, he had plenty of chances to settle with that one additional claimant and write a check. Instead he bet the farm that he would not be sued and the case would go away quietly like all the other victims. He thought the confidentially agreements would protect him and the victims would never band together to expose his bad acts and worst of all none of it would ever be made public. Your clients are why a TV show of American Greed exists. Tell them to spend their weekend counting over the last 5 years how many loan deposits they took where they never issued a loan?
>
> We are not dealing with this like the other claims where you got to pay off victims for fractions of what was stolen. We are going to use Silver Arch's previous settlement victims (that you thought confidentiality agreements would shield until a court orders it) as fact witnesses that will be most persuasive. Matt Cole is going to be held equally personally responsible and linked to Jeff Wolfers greed.
>
> Lastly as your clients are fully aware Rob Perlman would be a great reference check, I do what I say, have the connections to get things done and most importantly I follow through. Every hour that goes by is exposing your clients to massive amounts of increased claims, damages and exposure.

Given Mr. Ferris's intemperate email, and Plaintiffs' professed intention to elicit information for the benefit of others, Defendants are understandably concerned that the motivation for this lawsuit is not to recover losses- of which there were none – but to cripple SACP's business and impair its professional relationships. This already has materialized in Plaintiffs' subpoenas to Verus Commercial Real Estate LLC ("Verus"). Defendants' document production included a handful of emails between SACP and Verus, in the course of which Verus declined to participate in the proposed loan to FD. Armed with that scant information, Plaintiffs sent a blunderbuss deposition notice to Verus and two of its representatives, effectively jeopardizing the ongoing relationship between SACP and Verus (which had participated in earlier SACP loans). Should Plaintiffs be permitted to pursue the inquiries noted above, Defendants are troubled that such information shall be used by Plaintiffs to undermine other business relationships.

Of equal concern, information concerning Defendants' other transactions would easily be used by these Plaintiffs to encourage and precipitate other lawsuits, fueled by the unsupportable proposition that Defendants are engaged in illicit activities. This is of particular concern since Mr. Ferris has already threatened to seek disclosure of confidentiality agreements entered into in other proceedings (as he stated in his email to this office) and Plaintiffs' Oklahoma counsel has previously represented another party in a litigation against Defendants and only recently filed a new proceeding, fueled by claims that are disturbingly reminiscent of issues propounded by FD based upon discovery in this case.

BERNSTEIN CHERNEY LLP

      The Court has previously granted requests by Plaintiffs for details of SACP's revenues and balance sheet. Indeed, after SACP provided that information on a cash basis, Plaintiffs insisted that it be presented on an accrual basis. At the Court's direction, SACP provided that information as well – even though, as Plaintiffs have been advised, repeatedly, SACP does not routinely fund loans with its own capital.

      Defendants understand the Court's preference for transparency and full disclosure. We would suggest, however, that in this case, Plaintiffs seek to go a bridge too far, and to do so for improper purposes. With all of the foregoing in mind, we urge the Court to preclude Plaintiffs from seeking deposition testimony on the subjects noted above. That information constitutes nothing more than a fishing expedition and is not remotely related to the transactions which gave rise to this proceeding.

      Finally, while Defendants have been prepared to proceed with depositions next week, we believe that it is important for these issues to be resolved in advance in the event this matter cannot be resolved at the scheduled mediation. Should the Court require time to fully address these concerns, we would be prepared to reschedule the examinations at the earliest possible time once these issues are resolved.

Respectfully,

*Hartley Bernstein*

Hartley T. Bernstein

---

To the extent this letter is a motion for a protective order limiting the scope of topics for Defendant Silver Arch's 30(b)(6) deposition, it is untimely and thus **DENIED**.

If Plaintiffs seek an award of expenses under Rule 37(a)(5), they shall file a letter brief (no longer than 5 pages) by September 23, 2022.

The Clerk of Court is respectfully directed to close ECF Nos. 97 and 99.

**SO ORDERED.**

_____
Ona T. Wang                    9/15/22
U.S.M.J.