

10TH FLOOR • TWO LEADERSHIP SQUARE
211 NORTH ROBINSON • OKLAHOMA CITY, OK 73102-7103
(405) 235-9621 • FAX (405) 235-0439
www.mcafeetaft.com

MICHAEL AVERY
ATTORNEY AT LAW

WRITER DIRECT
(405) 270-6012
FAX (405) 228-7323
michael.avery@mcafeetaft.com

October 6, 2022

Hon. Jennifer L. Rochon U.S.D.J.
United States Courthouse
500 Pearl Street
New York, New York 10007

        Re:   *FD Special Opportunities V, LLC et al v. Silver Arch Capital Partners LLC et al*, 21-cv-00797(JLR)(OTW)

Dear Judge Rochon:

    In accordance with the Court's Order on September 22, 2022 [Doc. No. 103], this letter is being submitted jointly by counsel for Plaintiffs FD Special Opportunities V, LLC and FD GP Investment, LLC (collectively, "FD") and Defendants Silver Arch Capital Partners ("Silver Arch"), Jeffrey Wolfer and Matthew Cole (collectively "Defendants") regarding the status of this litigation.

    **I.**    **General Information**

1. Names and contact information for counsel are listed in the below signature blocks.
2. See Sections II and III, *infra*.
3. Each of FD is a Delaware limited liability company and had a principal place of business in Middlesex, County, Massachusetts during all events relevant to this dispute. Silver Arch is a New Jersey limited liability company and has a principal place of business in Bergen County, New Jersey. Subject matter jurisdiction is proper pursuant to 28 U.S.C. § 1332(b). Venue is proper pursuant to § 1391(b)(3).
4. The deadlines in the Scheduling Order in this case are currently expired. A new Scheduling Order is necessary. The only upcoming matters are party depositions which are scheduled to occur on October 25–28, 2022. On July 21, 2022, Judge Wang stayed further discovery pending mediation. Judge Wang has not issued a new Scheduling Order to date.
5. There are no outstanding previously-scheduled conference dates.
6. There are currently no outstanding motions, but the parties had submitted discovery motions, and Defendants had submitted a request for leave to file an amended Answer and Counterclaim and Third-Party Complaint, which Judge Wang denied but suggested they could be re-urged if necessary following party depositions. [ECF 74]. Due to scheduling disputes regarding party depositions, Judge Wang has directed the parties to confer and filed a proposed deposition scheduling order by October 11, 2022. [ECF 109].
7. There are no pending appeals.
8. To date, the parties have exchanged written discovery and produced documents.
9. The parties had independently exchanged settlement offers in or around May and June 2022, but did not reach settlement.
10. On September 9, 2022, the parties attended mediation as ordered by Judge Wang, but did not reach settlement.

11. The parties anticipate needing 3 days for trial.
12. Any further information is listed in Parts II and III, *infra.*

**II.     FD's Position on the Dispute**

In September 2020, FD contacted Silver Arch about refinancing a $27 million debt on commercial real property owned by FD. The debt was set to mature on January 6, 2021—a deadline FD made clear to Silver Arch in the very *first* communication in September 2020. Silver Arch assured FD that the timing of the existing loan's maturation would not be an issue and after receiving due diligence materials, agreed to lend FD the $27 million it needed.

The parties executed a Term Sheet on October 26, 2020, and shortly thereafter Silver Arch requested thousands of pages of due diligence materials, which FD promptly provided. After receiving the due diligence materials, Silver Arch agreed to lend FD the $27 million it needed. On November 11, 2020—during what Silver Arch now describes as a "third wave" of the Covid-19 pandemic—Silver Arch received an appraisal for the Property that expressly considered the effect of the pandemic on the Property's value. Silver Arch waited to share the appraisal with FD until December 28, 2020, despite numerous requests from FD.

On December 7, 2020, the parties signed a Loan Application drafted by Silver Arch. This was the *first* agreement requiring FD to work solely with Silver Arch. Between the Term Sheet and Loan Agreement, a condition of these agreements was that FD pay $233,500.00 in up-front deposits (the "Deposits") to Silver Arch. It is undisputed that FD paid these amounts.

Over the next three weeks of December 2020 and despite the hard deadline of January 6, 2021, Silver Arch continually delayed closing on the loan to FD. On December 23, 2020, Silver Arch for the first time mentioned Covid-19 concerns, stating they would "need to see how the next couple of weeks plays out." Again, this was *nine months* into the Covid-19 pandemic, three months after FD and Silver Arch began discussing a refinancing, and one month after Silver Arch had received the appraisal for the Property discussing the risks posed by Covid-19. Perhaps most significantly, this was only fourteen (14) days before the hard deadline of January 6, 2021.

By December 30, 2020, the parties' deal had fallen apart. Silver Arch proposed new and significantly different material terms *six days* before the hard deadline of January 6. According to Silver Arch, it could no longer consummate the previously agreed upon transaction because the Covid-19 pandemic created too much uncertainty about the future prospects of FD's real estate project. In response, FD demanded refund of its $233,500.00 worth of deposits, which Silver Arch refused.

When Silver Arch backed out of the transaction, FD was forced, with mere days to spare in advance of the maturation date of January 6, 2021, to secure emergency funding from another lender. On December 24, 2020, FD reached back out to Northern Bank, whom it had previously talked to in the early fall, to re-start the loan negotiations that it had abandoned in order to work solely with Silver Arch. As a result, this required FD to incur additional loan-related expenses it would not have had to incur but for Silver Arch's bad faith conduct and breach. Adding insult to injury, Silver Arch has continued to refuse to refund the Deposits FD had previously made, leading to the filing of this lawsuit.

Plaintiffs bring claims against SACP and its officers Matthew Cole and Jeffrey Wolfer for breach of contract, breach of good faith and fair dealing, and fraud.

### III.     Defendants' Position on the Dispute

SACP is a private lender in the commercial real estate market. In October 2020, FD contacted SACP seeking a $27 million loan in order to refinance outstanding debt on a shopping center located in Charlotte, North Carolina and known as McCullough Commons (the "Shopping Center"). On October 23, 2020, FD signed a term sheet (the "Term Sheet") which provided that, after evaluating preliminary information provided by FD, SACP would initiate due diligence of the loan request. The Term Sheet was countersigned by SACP on October 26, 2020.

After obtaining an appraisal of the Shopping Center, which was to serve as collateral for the Loan, SACP agreed to arrange a loan (the "Loan") in the amount of $26.7 million. That Loan was predicated upon completion of due diligence and the appraisal which, in turn, relied upon the value of the Shopping Center, including revenues received from tenants of the Shopping Center. In furtherance of that process, on December 7, 2020, FD signed a loan application (the "Loan Application") which provided, among other things, that FD "is working solely with Lender to secure financing for the Property."

In December 2020, before vaccines became widely available, a second wave of COVID-19 began to sweep the U.S, In response to the growing volume of cases, the Governor of North Carolina, where the shopping center was situated, issued a Modified Executive Order limiting, and in some instances curtailing, certain businesses, including restaurants and bars. In view of the uncertainties posed by the pandemic, SACP, and concern that restrictions on tenant operations at the Shopping Center (including restaurants) might negatively impact Shopping Center Revenues, and as a result, both the appraisal and the ability of FD to service the proposed Loan, SACP informed FD that a Loan closing would need to be deferred until the effects of the latest COVID-19 wave could be assessed. FD objected to any delay, insisting that the Loan would have to close before the end of December because FD"s outstanding debt to Ladder Capital Finance LLC ("Ladder") came due on January 6, 2021. Although SACP was aware of that fact, SACP had never agreed to guarantee a Loan closing prior to January 6, 2021 and never had agreed that time was of the essence. Neither the Term Sheet nor the Loan Application, nor any other document signed by the parties fixed a firm closing date. In fact, FD had agreed expressly, in the Loan Application signed by FD that, while SACP would work in good faith to close the Loan by December 30, 2021, SACP " Lender shall not be liable to Borrower for any failure of Lender to achieve a Closing by such date. FD's Complaint is founded on the unsupported premise that SACP did not intend to complete the Loan.

At no point did SACP "back out" from the Loan. SACP remained prepared to proceed with the Loan once a closing date could be determined.

FD declined to proceed with the SACP Loan and instead obtained financing from Northern Bank & Trust on or about January 6, 2021, for a greater amount and on significantly superior terms than had been offered for the SACP Loan. To SACP's understanding, FD had continued to negotiate terms for the Northern Bank loan during the pendency of the SACP Loan, despite FD's agreement to deal exclusively with SACP. It is SACP's position that FD suffered no

3

losses attributable to the SACP transaction but remains liable to SACP for a Break-up Fee that was triggered by FD's decision to abandon the SACP Loan. It is SACP's further position that, pursuant to the express terms of the Term Sheet and Loan Application, FD forfeited any right to claim refund of the deposits paid to SACP.

Respectfully,

*/s/ Michael A. Avery*
**MCAFEE & TAFT**
**A PROFESSIONAL CORPORATION**
Michael A. Avery, Esq., admitted pro hac vice
Michael A. Duncan, Esq., admitted pro hac vice
Jennie M. Mook, Esq., admitted pro hac vice
Tenth Floor, Two Leadership Square
211 N. Robinson
Oklahoma City, OK  73102-7103
Tel:  405.552.2269
Fax:  405.228.7469
Michael.avery@mcafeetaft.com
michael.mcclintock@mcafeetaft.com
alex.duncan@mcafeetaft.com

*/s/ Stephen G. Traflet*
**TRAFLET & FABIAN**
Stephen G. Traflet (ST-9654)
1001 Avenue of the Americas
11th Floor
New York, NY 10018
Tel: 212.244.6199
Fax: 212.859.7313
straflet@trafletfabian.com

*Attorneys for Plaintiffs*

-and-

*/s/ Hartley Bernstein*
Hartley Bernstein
**BERNSTEIN CHERNEY LLP**
767 Third Avenue, 30th Floor
New York, NY 10017
Tel: 212.381.9684
hbernstein@bernsteincherney.com
*Attorney for Defendants*

4